BENJAMIN D. HARGROVE
TIMOTHY J. RACICOT
Assistant U.S. Attorneys
2601 Second Ave North, Suite 3200
Billings, Montana 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
Email: Benjamin.Hargrove@usdoj.gov
      Tim.Racicot2@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BRETT MAURI, <br><br> Defendant. | CR 24-15-M-DLC <br><br><br> SENTENCING MEMORANDUM |

## INTRODUCTION

"The financial burden and stress caused by Brett Mauri was extreme. We were under a time crunch since my husband was battling Stage 4 metastatic thyroid cancer. The lies and deceit that Brett had spread took a toll on us."

                            - Victim #5, VIS

1

"I have felt shame and embarrassment from being so easily tricked and have tried to put both Brett and his father out of my mind."

- Victim #2, VIS

"When we received the call of the verdict . . . . I cried – I did not know relief would be so overwhelming."
- Victim #6, VIS[1]

These words reflect only some of the emotional turmoil and financial stress the defendant caused the 9 victims and their families in this case. He manipulated people by exploiting their dreams and need for a home, and then spent more than $1.8 million of other people's savings indulging himself and his wife with shopping sprees and travel. He took advantage of his customers' trust and now he has very little left with which he can repay what he stole.

Brett Mauri comes before this Court with no one to blame but himself. The Presentence Investigation Report (PSR) calculated Mauri's total offense level as 27 and his criminal history category as II, resulting in an advisory guideline range of 78 to 97 months imprisonment. PSR ¶ 160.

Mauri's actions impacted 9 families, not counting the hourly employees he failed to pay. His greed ruined retirement plans, strained marriages, and forced people to uproot their lives. His calculated and callous behavior demands a high

---

[1] After the final PSR was published, the United States received a victim impact statement from Victim #6, which is attached to this memorandum and filed under seal.

guideline sentence. The United States recommends a custodial sentence of 97 months, three years of supervised release, and a restitution order of $1,855,025.25.

**OBJECTIONS**

There are two outstanding objections by the defendant that are addressed and included in the Addendum to the PSR. The United States will briefly address both in turn.

1. <u>Restitution and Loss Amount</u> – Mauri objects to the restitution figure because he continues to assert his innocence. PSR Addendum 1. The United States agrees with the response by U.S. Probation to this objection. *Id*. The Court heard the evidence presented throughout the five-day trial and is in the best position to determine the restitution and loss amount in this case.

The United States has proven the restitution amount by the preponderance of the evidence as required by 18 U.S.C. § 3664(e). *See also, e.g., United States v. Holmes*, 816 F.App'x 179, 180 (9th Cir. 2020) (affirming district court's restitution order relying on PSR calculations). The restitution/loss amount outlined in PSR ¶ 51, totaling $1,855,025.25, is consistent with the evidence presented at trial and the documents produced by the 9 victims in this case in preparation for sentencing. PSR ¶¶ 18-49; Rest Assured PSR Attachment.

Because the United States has carried its burden of proving the victims' actual loss by a preponderance of the evidence, the burden shifts to Mauri to show the

amount should be offset. *United States v. Gagarin*, 950 F.3d 596, 607-08 (9th Cir. 2020); *United States v. Price*, Case Nos. CR18-85-BLG-DLC & CR 18-149-BLG-DLC, 2020 WL 7647368, *2 (D. Mont. Nov. 18, 2020). *See also, e.g., United States v. Borino*, 123 F.4th 233, 247 (5th Cir. 2024) (requiring the burden to shift to defendant to prove offset after government met its burden).

The Mandatory Victims Restitution Act provides that the Court "shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The Court must order restitution to each victim for the full amount of loss and the law affords each of them the right to full and timely restitution. 18 U.S.C. §§ 3664(f)(1)(A), 3771(a)(6). As such, the United States requests that the Court order full restitution in the amount of $1,855,025.25. PSR ¶ 51.

2. <u>Obstruction Enhancement</u> – Mauri generally objects to the applicability of USSG §3C1.1 for obstructing justice, but he offers no reasons, legal or otherwise, why it should not apply. PSR Addendum 1-2. For the reasons described in paragraphs 52-66 of the PSR, the enhancement is applicable and Mauri's guideline range is accurately calculated.

# ARGUMENT

The Court shall impose a sentence "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a) (2018). Determining a "sufficient, but not greater than necessary" sentence requires the Court to consider the following factors:

- seriousness of the offense;
- respect for the law;
- just punishment for the offense;
- adequate deterrence in relation to the criminal conduct;
- protecting the public from further crimes of the defendant; and,
- providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Additional considerations for the Court when imposing an appropriate sentence include: the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. *Id.* § 3553(a)(1), (3). The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities." *Id.* § 3553(a)(4), (5), (6). Finally, the Court should consider "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(7).

//

1. **History and Characteristics**

   Unlike most white-collar defendants, who have no criminal history, Mauri is a criminal history category II and has been charged with additional crimes on eight prior occasions. PSR ¶¶ 88-91, 95-98. A number of these charges were dismissed due to deferred sentences and other delayed dispositions, including a deferred prosecution in 2022 for a felony charge of issuing a bad check. PSR ¶ 91. Although many of these cases did not result in prison sentences and are therefore not reflected in his criminal history calculation, they nonetheless expose Mauri's lack of character, demonstrated through his last 15 years of committing crimes.

2. **Obstructive Conduct**

   Mauri's obstructive behavior throughout this case is another reason why a high guideline sentence is warranted. At trial, Mauri perjured himself throughout his testimony in a way that was intended to mislead the jury. PSR ¶¶ 52-66. He told numerous lies about how he spent victims' money, stating over and over that he used their funds for timber and building materials when his own bank statements showed that to be false. PSR ¶¶ 56, Glaringly, Mauri fabricated a financial summary exhibit, which he presented to the jury that was meant to mislead them, as it contained information about how he purportedly spent the $600,000 he took from Victim #4. PSR ¶ 59. The veracity of this exhibit, however,

was directly refuted by the evidence and the jury's finding of guilt in this case. PSR ¶ 63.

Mauri's obstructive behavior continued throughout the sentencing process when he failed to provide the required financial disclosures until two months past the deadline, despite repeated reminders from the U.S. Probation Office. PSR ¶¶ 146-47. In addition to his late disclosure, the information provided is insufficient for the United States and U.S. Probation to properly assess his financial condition and recommend a payment plan for his mandatory restitution. Notable deficiencies include:

- Significant comingling appears in Mauri's reported household and business expenses. For example, Mauri reports net business income as household income, but omits net rental income even though he and his spouse have tenants at both business and personal properties and claims both mortgage payments even though the Creamery mortgage should be a business expenses. PSR ¶¶ 144, 157. Additionally, he claims business utility expenses, so it is unclear what expenses he may have deducted from "business income" to reach the net amount. PSR ¶ 157.

- The inability for U.S. Probation to discern between household and business expenses prevents U.S. Probation from being able to determine Mauri's actual monthly cash flow. Based on his reporting, Mauri loses almost $2,000 per month. PSR ¶ 157. By removing apparent business expenses but accepting all other expenses as accurate, Mauri has a positive cash flow of $229 per month. Using the IRS Collection standards[2] for a household of 4 as a guide, Mauri should have $4,000 of household income per month available to begin paying his victims ($9,926 income - $5,927 standard expenses = $3,999). Even allowing some greater expenses based on his reported—but

---

[2] "Collection financial standards," Internal Revenue Service, https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards (last accessed Jan 15, 2024).

- unverified—expenses, Mauri should have a monthly household disposable income of no less than $420.00.

- Mauri disclosed that he owns a cabin he calls "Trapper's Cabin," which he valued at $30,000. PSR ¶ 157. Because he provided no other information on the Trapper's Cabin, the United States is wholly unable to evaluate Mauri's ascribed value, sales potential, and ownership.

- Mauri claims assets belonging solely to his spouse, such as lumber and antique inventory. PSR ¶ 157. However, this contradicts other information he reported to U.S. Probation, that he jointly owns both Bitterroot Timber and the Creamery with his spouse. PSR ¶ 156.

Mauri alone bears the burden of demonstrating any financial inability to pay his restitution. 18 U.S.C. § 3664(e). Mauri provided a financial statement that is entirely unsupported by verifiable documentation, and he has failed to meet this burden by willfully obfuscating his financial condition in his disclosures to U.S. Probation. Mauri's victims should not continue to suffer because of his continued deceit.

### 3. Seriousness of the Offenses

The seriousness of the offenses speak for themselves. As the Court heard throughout trial, Mauri boldly stole: $600,000 from Victim #4 (PSR ¶¶ 29-31); $10,000 from Victim #7 (PSR ¶¶ 38-39); $20,000 from Victim #8 (PSR ¶¶ 40-42); and $229,258 from Victim #9 ((PSR ¶¶ 43-48) without building *anything* whatsoever. Those who received some construction work, were forced to incur significant expenses to correct Mauri's substandard product and finish their builds, or to sell their land entirely when they realized Mauri's promises would never

8

come to fruition. PSR ¶¶ 18-37. At trial, the Court heard how Mauri systematically destroyed retirement plans to finance his personal spending. PSR ¶¶ 29, 45, etc. The Court heard how his fraud impacted multiple families who needed a home in which to raise their children and how he knowingly deprived a married couple of their home while the husband suffered through cancer treatments.

Mauri's callous greed caused far more than just financial harm. As the victims testified at trial, Mauri inflicted tremendous strain on 9 families and left them with feelings of shame and embarrassment.

## CONCLUSION

Based on Mauri's criminal history, his obstructive behavior, as well as the seriousness of his crimes and the significant impact it had on so many victims, the United States believes that a sentence of 97 months custody, followed by three years of supervised release, and restitution of $1,855,025.25, provides just punishment and is significant but not greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a).

Additionally, the United States requests that the Court order Mauri to complete a financial statement and submit to a debtor's examination at the U.S. Attorney's Request, under 18 U.S.C. § 3664(d)(4), and to make payments of no less than $500 per month until U.S. Probation and the U.S. Attorney's Office have sufficient information to increase that payment. Given Mauri's debt and number of

9

outstanding liens and judgment, the United States asks the Court to modify the special condition of supervision, found at PSR ¶ 182, to prohibit Mauri from incurring "new debt" without prior approval, rather than strictly "new lines of credit," to ensure Mauri does not further indebt his household at his victims' expense.

DATED this 15th day of January, 2025.

JESSE A. LASLOVICH
United States Attorney

*/s/ Benjamin D. Hargrove*
Benjamin D. Hargrove
Assistant U.S. Attorney

*/s/ Timothy R. Racicot*
Timothy R. Racicot
Assistant U.S. Attorney